## Ison v. Watson.

(Decided March 14, 1916.)

## Appeal from Elliott Circuit Court.

1. Elections—Schools and School Districts—Election of Trustees—Officers of Election—Who May Hold Election—Validity of Election.—Where, in an election for school trustee, separate elections are held by separate officers, each claiming to be elected, and none of the voters for the contending candidates participated in the election held by the officers representing the other candidate, the validity of the election turns on which set of officers was legally elected, and if each set received an equal number of votes neither set was authorized to hold the election and neither election was valid.

2. Elections—Schools and School Districts—Election of Trustees—Contest—Evidence.—In a contested school trustee election, where separate elections were held by separate officers representing each of the candidates, evidence considered and held that each set of officers received an equal number of votes, and as neither set of officers was authorized to hold the election no valid election was held.

3. Schools and School Districts—Trustee—Invalid Election—Vacancy—How Filled.—Where no valid election for school trustee is held, a vacancy occurs, which may be filled by the county board of education.

4. Schools and School Districts—School Trustee—Recognition by County Superintendent—Validity of Acts.—The acts of a school trustee recognized by the county superintendent pending a controversy over the office are valid.

J. H. FERGUSON for appellant.

A. T. REDWINE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

James A. Ison and Frank Watson were candidates for the office of school trustee in sub-district 14 of Educational Division No. 3 of Elliott county. The contending candidates and their supporters met at the school house in said district at one o'clock on August 7th, 1915. Watson, who was the present trustee, and who had possession of poll sheets, called the meeting to order and asked for nominations for election officers. One of Ison's friends nominated two candidates for judges and one for clerk, while one of Watson's friends nominated three other candidates for the same positions. When

the voters were lined up and counted it appeared that there were twenty-six votes for Ison's candidates and twenty-five votes for Watson's candidates. Among those voting for Ison's candidates were Alonzo Smith, Nathan Osben and James Smith. Watson took the position that they were not entitled to vote and declared his own candidates elected. Ison's officers demanded the poll sheets, but Watson delivered them to the officers which his friends had elected. His friends held an election in one side of the house, while Ison's friends held an election in the other side of the house. Ison received twenty-six votes and Watson twenty-four. Ison's officers certified that he was elected, while Watson's officers certified that Watson was elected. The county superintendent recognized Watson as trustee.

This suit was brought by Ison to recover the office. Judgment was rendered in favor of Watson, and Ison appeals.

Ison's voters did not participate in the election held by Watson's officers, nor did Watson's voters participate in the election held by Ison's officers. Since only those officers who were legally elected had the right to conduct the election, it follows that if one set of officers was elected the election held by the other set was void, and if neither set of officers was elected, no valid election took place. Hence, the case turns on whether or not either set of officers was elected.

Ison contends that the following persons who voted for Watson's officers were not qualified voters: Archie Fraley, Charlie Smith, Arvina Watson, Mary Jane Watson, Elizabeth Watson, Roda Mullins, and Rinda Gibson.

It would extend this opinion to too great a length to set out in detail all the evidence respecting their qualifications. The votes of Elizabeth Watson, Roda Mullins, Rinda Gibson, Arvina Watson, and Mary Jane Watson are contested on the ground that they could neither read nor write. It is admitted that the evidence with respect to Elizabeth Watson and Roda Mullins is insufficient. No one testifies that Rinda Gibson could not read or write. On the contrary, her husband says that she can. Two or three witnesses testify that Mary Jane Watson could not read or write a year or two before the election took place. Her husband, however, testifies that she had been instructing his children in spelling, reading and writing for several years, and that his

wife could read and write. In view of the fact that many women voters are now studying for the purpose of qualifying themselves to vote in school elections, evidence that a woman voter could not read or write a year or two before the election, while entitled to some weight, is, of course, not conclusive of the question, or sufficient to overcome positive evidence to the effect that she could read or write at the time the election took place. We, therefore, conclude that the proof with respect to Rinda Gibson is insufficient to show that she could not read or write. While two or three witnesses testify that Arvina Watson could not write, there is substantial evidence to the effect that, prior to a nervous trouble which she had, she could write very well, and that her present incapacity was due, not to a lack of knowledge, but entirely to a nervous disorder. We, therefore, see no reason for holding that she was not qualified to vote. A careful consideration of the evidence with respect to Archie Fraley and Charlie Smith convinces us that they were both qualified voters. On the whole, therefore, we conclude that all the voters who voted for Watson's election officers were qualified.

By counter-claim, Watson challenges the qualifications of Alonzo Smith, James Smith, Nathan Osben, and Robert G. Oliver. Alonzo Smith's vote is contested on the ground that he was not twenty-one years of age. The weight of the evidence, however, shows that he was of age when the election took place. While there is evidence to the effect that both James Smith and Nathan Osben were absent from the sub-district for quite a while, it appears from their evidence and the evidence of other witnesses that they always claimed their homes in the sub-district in question; that they were absent for temporary purposes only and always had the intention of returning to the sub-district. We conclude that they had the right to vote.

With respect to Robert G. Oliver, a different question is presented. Oliver predicates his right to vote on the fact that he owns a small tract of land in the district. As a matter of fact, however, he never maintained any home on this land. He never slept there nor took a meal there. On the contrary, he always slept and took his meals at the home of his father, who resided in another sub-district. Clearly he was not entitled to vote.

Striking Oliver's name from the list of voters who voted for Ison's officers, it follows that Ison's officers received twenty-five votes, while Watson's officers also received twenty-five votes. Under these circumstances, neither set of officers was elected and neither had the right to hold the election. It follows, therefore, that no valid election was held, and that neither Ison nor Watson is entitled to hold the office by virtue of the election. In such a case, there is a vacancy, which must be filled by appointment by the county board of education. Subsection 4, section 4426a, Kentucky Statutes. However, the acts of Watson, who was recognized by the superintendent pending this controversy over the office, are those of a *de facto* trustee and are, therefore, valid. Lacy v. Swango, 22 R. 390, 57 S. W., 473. The costs will be equally divided.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.